IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
2011 JAN 20 PM 3:58
US DISTRICT COURT
MIDDLE DISTRICT OF FL
ORLANDO FLORIDA

CASE NO.: CI-_____

J.R. HARDING,

    Plaintiff,

vs.

PERENNIAL PROPERTIES, INC.,
a Foreign corporation,

    Defendant.
_____/

6:11-cv-85-Oel-18DAB

COMPLAINT
JURY DEMAND

## I. INTRODUCTION

Plaintiff brings this action for violations of the accessibility requirements of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHAA"), 42 U.S.C. §§ 3601-3619, and alleges:

1. Plaintiff is an individual, is a resident of the State of Florida, and is a quadriplegic.

2. PERENNIAL PROPERTIES, INC. ("PERENNIAL" or "Defendant") is a corporation organized and existing under the laws of the State of Georgia with is principal place of business in Georgia. PERENNIAL is the owner and developer of a multi-family apartment complex located at 9702 Universal Boulevard, Orlando, Florida 32819 known collectively as the District Universal Boulevard Apartments & The District Shops ("The District").

3. Plaintiff visited The District on November 24, 2010, for the specific purpose of testing The District for compliance with the FHAA after reviewing floor plans and other details about the complex which were downloadable on the Internet and which gave Plaintiff a

reasonable factual basis to believe that The District discriminated against him and other persons with disabilities similar to Plaintiff. Plaintiff's visit to The District was in a capacity as a "Tester" as that term of art has been defined under case law construing the FHAA.

4. In connection with the construction of The District, Defendant has engaged in a pattern or practice of discriminating against people with disabilities in violation of the FHAA by designing and/or constructing its multi-family dwellings and the common use and public use areas associated with those dwellings (hereinafter referred to as "covered units" or "the covered apartment complex") in such a manner as to deny people with disabilities full access to and use of, the facilities as required under the FHAA. The Defendant's violations of the FHAA are widespread, and continue more than 19 years after the effective date of the FHAA accessibility requirements.

5. The Defendant, who is the current owner of the apartment complex tested by Plaintiff, has engaged in an ongoing and continuous pattern and practice of discrimination in the rental of dwellings, in violation of the FHHA, by offering for rent apartments which it knew or could have known, with the exercise of reasonable care, failed to provide the accessible and adaptable features required by the FHAA for persons with physical disabilities. Consequently, this Defendant has made and is making dwellings unavailable to people with physical disabilities and/or have discriminated against them in the terms, conditions or privileges of the rental of dwellings in violation of the FHAA.

6. The Defendant's violations of the FHAA accessibility requirements have serious and significant consequences for people with disabilities. These blatant violations, and many others, effectively communicate that people with disabilities, including Plaintiff, are not welcome at the Defendant's property.

7. According to the 2004 American Community Survey conducted by the U.S. Census Bureau, more than 51 million Americans (nearly one in five) have some form of disability, and one in eight has a severe disability. Of that number, more than 2.7 million people over the age of 15 years use a wheelchair, and that number is expected to increase as the population ages and medical care allows people with disabilities to live longer and fuller lives. Another 7 million use a cane, crutches, a walker or other mobility aid. Accessible housing is an essential means of ensuring that people with disabilities are able to fully participate in community life.

8. A person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps, excessively high thresholds at building or unit entrances or by excessive running slopes on the route to covered units as by a posted sign saying "No Handicapped People Allowed." In considering the 1988 disability amendments to the Fair Housing Act, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers and builders who fail to construct dwellings and public accommodations accessible to and adaptable by, people with disabilities. H.R. REP. NO. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186.

9. Defendant's flagrant, systematic, and continuing violations of the FHAA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities, rendered units unavailable to people with disabilities, caused humiliation to Plaintiff, and caused Plaintiff to divert his scarce resources in an attempt to redress these violations. Enforcement of the FHAA against Defendant is necessary because of the extensive and continuing nature of the civil rights violations on the part of Defendant.

## II. JURISDICTION AND VENUE

10. This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 2201 and 2202 and 42 U.S.C. § 3613(A).

11. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) in that the events and omissions giving rise to these claims occurred in this District, and these claims concern or otherwise relate to real property located in this District. In addition, the Defendant is doing business in the State of Florida, and may be found in this District.

## III. STATUTORY AND REGULATORY FRAMEWORK

12. Congress enacted the FHAA design and construction accessibility requirements as part of a comprehensive revision of the Fair Housing Act to prohibit discrimination on the basis of disability.[1]

13. In response to Congressional findings, the FHAA mandates that multi-family apartment buildings containing four (4) or more units, and built for first occupancy after March 13, 1991, ("covered multifamily dwellings"), be subject to certain design and construction requirements. All covered multifamily dwelling units must provide:

    a. public-use and common-use areas that are readily accessible to, and usable by, people with disabilities;

    b. all doors into and within covered unites that are sufficient wide to allow passage by people in wheelchairs;

    c. an accessible route into and through the dwelling;

---

[1] The FHAA uses the term "handicap" instead of the term "disability". Both terms have the same legal meaning. *See, Bradgon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"). Except when referring to the statutory language of the FHAA, this complaint uses the term "disability", which is more generally accepted.

      d.    light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

      e.    reinforcements in bathroom walls that allow for the later installation of grab bars; and

      f.    usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

14. Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHAA design and construction regulations in January 1989, *see* 24 C.F.R. § 100.205, and published the final Fair Housing Accessibility Guidelines on March 6, 1991, *see* 56 Fed. Reg. 9472, and the *Fair Housing Act Design Manual* in August 1996, which was revised in August 1998.

15. The FHAA also prohibits discrimination in the rental of a dwelling or to otherwise made unavailable or deny a dwelling to an individual because of disability, 42 U.S.C. § 3604(f)(1), or to discriminate in the terms, conditions, or privileges of a rental, or in the provision of services or facilities in connection with the rental of a dwelling, because of disability, 42 U.S.C. § 3604(f)(2).

16. Plaintiff intends to return to The District on one or more future occasion to specifically discern if The District's discriminatory practices have corrected, cured and eliminated.

17. All conditions precedent to the maintenance of this action have been performed, excused or waived.

18. Plaintiff has retained the law firm of Morgan & Morgan, P.A. and is obligated to pay said law firm a reasonable attorneys' fee for their services

## IV. LEGAL CLAIMS

### FIRST CAUSE OF ACTION
### Violations of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)-(f)(2) and (f)(3)(C)
### By the Defendant as Designer/Contractor

19. Plaintiff adopts and re-alleges the allegations of Paragraphs 1 through 18 of this Complaint.

20. The District contains residential apartment units are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

21. At The District each unit on floors served by an elevator are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(A), was built for first occupancy after March 13, 1991, and is subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHAA. The public and common use areas of The District are also subject to the design and construction requirements of 42 U.S.C. § 3604(f)(3)(C).

22. The Defendant has failed to design and construct the Tested Properties in compliance with the requirements of the FHAA, and, as a result:

    a. There is no accessible parking for the disabled at the Walgreen's which is incorporated into and part of the District, in violation of 24 C.F.R. 100.205(c)(1); and

    b. There is no accessible parking for the disabled at the Leasing Office which is incorporated into and part of the District, in violation of 24 C.F.R. 100.205(c)(1);

    c. There are excessive surface slopes on access aisles to guest parking, in violation of 24 C.F.R. 100.205(c)(1);

    d. The women's restroom in the leasing Office lacks a pull/latch side door maneuvering space for forward approach, in violation of 24 C.F.R. 100.205(c)(1);

e. The Cyber Lounge located on the property has inadequate knee space at the bar for wheelchair users, in violation of 24 C.F.R. 100.205(c)(1);

f. The Cyber Lounge has inadequate knee space at its tables for wheelchair users, in violation of 24 C.F.R. 100.205(c)(1);

g. Mailboxes at the Mail Room have numerous height violations, in violation of 24 C.F.R. 100.205(c)(1);

h. The entry at the Model Unit has an excessive height of threshold, in violation of 24 C.F.R. 100.205(c)(3)(i);

i. The Model Unit has an inadequate width of route to accommodate a wheelchair user, in violation of 24 C.F.R. 100.205(c)(3)(i);

j. The patio door of the Model Unit has an excessively high threshold and inadequate door clearance width, in violation of 24 C.F.R. 100.205(c)(3)(i);

k. The water closet of the Model Unit has inadequate clearance, in violation of 24 C.F.R. 100.205(c)(3)(iv);

l. The bath tub in the Model Unit has inadequate floor space, in violation of 24 C.F.R. 100.205(c)(3)(iv);

m. The patio door of the Business Center has an excessively high threshold and inadequate clearance width, in violation of 24 C.F.R. 100.205(c)(1);

n. The door to the Business Center has excessive closing speed, in violation of 24 C.F.R. 100.205(c)(1);

o. The restroom of the Business Center has inadequate clearance at the water closet and insufficient knee space at the lavatory, in violation of 24 C.F.R. 100.205(c)(1);

p. Numerous corridors at the property have fire extinguishers which constitute protruding objects, in violation of 24 C.F.R. 100.205(c)(1);

q. The 2 bedroom, 1 bath units designated as "handicapped units" have excessive threshold heights, in violation of 24 C.F.R. 100.205(c)(3)(i);

r. The 2 bedroom, 1 bath units designated as "handicapped units" have excessive threshold heights and inadequate width clearance at patio doors, in violation of 24 C.F.R. 100.205(c)(3)(i);

s. The 2 bedroom, 1 bath units designated as "handicapped units" have inadequate width of route, in violation of 24 C.F.R. 100.205(c)(3)(i);

t. The restroom located at the pool has insufficient door maneuvering space, in violation of 24 C.F.R. 100.205(c)(1);

u. The rinse shower located at the pool has excessively high height of controls and inadequate provision for the operation of controls, in violation of 24 C.F.R. 100.205(c)(1);

v. The cross slopes at the pool fail to provide an accessible route, in violation of 24 C.F.R. 100.205(c)(1), and

w. There are, upon information and belief, numerous other violations of the FHAA which Plaintiff was unable to observe at the time of his site visit but which will be readily discernable through a consensual or court-ordered site inspection during discovery in this action.

23. Through the actions and inactions described above, the Defendant has:

a. discriminated in the rental of or otherwise made unavailable, or denied dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

b. discriminated against persons because of their disabilities in the terms,

conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

    c.    failed to design and construct covered multifamily dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. Part 100.205.

## SECOND CAUSE OF ACTION
### Violations of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)-(f)(2) by the Defendant as Owner

21.    Plaintiff realleges the allegations of Paragraphs 1-18 and 20-22 above as if fully set forth herein.

22.    Through the actions and inactions described above, the Defendant has:

    a.    discriminated in the rental of, or otherwise made unavailable, or denied dwellings to people because of their disabilities in violation of the FHAA, 42 U.S.C. § 3604(f)(I); and

    b.    discriminated against people with disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling in violation of the FHAA, 42 U.S.C. § 3604(f)(2).

24.    The Defendant's conduct described herein has been intentional, willful, and with callous disregard for the rights of people with disabilities.

25.    As a result of the Defendant's wrongful conduct, Plaintiff has been injured by a discriminatory housing practice and is, therefore, an "aggrieved person[s]" as defined by 42 U.S.C. § 3602(i), and as used in 42 U.S.C. § 3613(a)(1)(A).

## V.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter an Order against Defendant, as follows:

A.    Declaring:

    1.    the conduct of the Defendant in designing and constructing The District, as alleged herein, is in violation of the FHAA, 42 U.S.C. § 3604(f)(1)-(f)(2) and (f)(3)(C); and,

    2.    the conduct of the Defendant in continuing to rent covered units which do not comply with the FHAA, 42 U.S.C. § 3604(f)(3)(C) is in violation of FHAA, 42 U.S.C. § 3604(f)(1)-(f)(2); and

B.    Enjoining:

    1.    the Defendant, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them from failing or refusing to bring the covered dwelling units and the public use and common use areas at each of The District into immediate compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court; and to perform or allow such other acts as may be necessary to effectuate any judgment of this Court against them.

    2.    The Defendant, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, from renting covered dwelling units in The District until all such units and the public common

use areas of The District have been brought into immediate compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations.

C. Permanently enjoining the Defendant from failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with the FHAA and applicable regulations.

D. Ordering Defendant to:

1. survey each and every apartment community owned by Defendant or its affiliates containing "covered units" and appurtenant common and public use areas at any covered property for which any of them had a role in the design and construction since March 13, 1991, other than The District (the "Remaining Portfolio") and assess the compliance of each with the accessibility requirements of the FHAA.

2. report to the Court the extent of the noncompliance of the Remaining Portfolio with the accessibility requirements of the FHAA; and,

3. bring each and every such apartment community in the Remaining Portfolio into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations.

E. Enjoining the Defendant and the owner of any other covered apartment community in the Remaining Portfolio not presently known to Plaintiff from failing or refusing to permit the survey of any of their covered properties that were designed and/or built by the Defendant and any retrofits ordered by the Court to be made at such property, to also comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the Defendant.

F. Award such compensatory damages as would fully compensate Plaintiff for the injuries incurred as a result of the discriminatory housing conduct of the Defendant;

G. Award such punitive damages against the Defendant as are proper under the law;

H. Award Plaintiff his costs, attorneys' fees, and expenses pursuant to the FHAA; and

I. Award such other relief as this Court deems just and proper.

## VI. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

> MORGAN & MORGAN, P.A.
> 20 North Orange Avenue, Suite 1600
> P.O. Box 4979
> Orlando, FL 32802
> Telephone: 407.849.2972
> Facsimile: 407.418.2048
>
> By: _[signature]_
> David S. Oliver
> Florida Bar No. 521922
> Doliver@BusinessTrialGroup.com
> James S. Byrd, Esq.
> Florida Bar No. 539104
> JByrd@BusinessTrialGroup.com

Dated: January 20, 2011