UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

J. R. HARDING,

           **Plaintiff,**

-vs-                                                      Case No.  6:11-cv-85-Orl-19DAB

ORLANDO APARTMENTS, LLC &
BEHRINGER HARVARD DISTRICT REIT,
LLC.,

           **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss First Amended Complaint by Defendant Behringer Harvard District Reit, LLC (Doc. No. 17, filed Mar. 11, 2011); and

2. Response to Defendant Behringer Harvard District Reit, LLC's Motion to Dismiss by Plaintiff J. R. Harding (Doc. No. 25, filed Apr. 7, 2011).

**Background**

**I. Plaintiff's Allegations[1]**

On November 24, 2010, Plaintiff J.R. Harding, a quadriplegic, visited the District Universal Boulevard Apartments & The District Shops ("the District"), a multi-family apartment complex located at 9702 Universal Boulevard, Orlando, Florida, for the specific purpose of testing the

---

[1] The facts presented in this Order are derived from the allegations of the Amended Complaint. These facts are included only to provide context and should not be construed as findings of fact.

premises for compliance with the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619. (Doc. No. 11 ¶¶ 1, 4, filed Feb. 14, 2011.) At the time of Plaintiff's visit, the District was owned by Defendant Orlando Apartments, LLC ("Orlando Apartments"). (*Id.* ¶ 2.) On December 30, 2010, Orlando Apartments sold the District to Defendant Behringer Harvard District Reit, LLC ("BHDR"). (*Id.* ¶ 3.)

Harding asserts that Orlando Apartments violated the FHA by designing and constructing dwellings and common use areas in a manner that denies disabled persons full access and use of the facilities. (*Id.* ¶ 5.) Plaintiff further alleges that since purchasing the District, BHDR has knowingly continued to offer apartments for rent which fail to provide at least twenty-two accessible and adaptable features described in the regulations promulgated by the United States Department of Housing and Urban Development, 24 C.F.R. § 100.205 ("HUD Regulations"). (*Id.* ¶¶ 6-8, 25, 28.)

## II.  Procedural History

On February 14, 2011, Plaintiff filed a two-count Amended Complaint alleging the following: (1) violation of 42 U.S.C. § 3604(f)(1)-(2) and (f)(3)(C) by Orlando Apartments for improper design and construction; and (2) violation of 42 U.S.C. § 3604(f)(1)-(2) by BHDR for maintaining the defective conditions set forth in the count against Orlando Apartments. (Doc. No. 11.) BHDR now moves to dismiss Count II of the Amended Complaint, and Plaintiff has filed a response in opposition. (Doc. Nos. 17, 25.)

**Standard of Review**

## I.  Standing

As a general matter, a federal court has the power to hear only those cases over which it has been granted subject matter jurisdiction by Article III, Section 2 of the United States Constitution.

Article III provides that the judicial power extends over "cases" and "controversies." U.S. Const. Art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). The United States Supreme Court has interpreted this language to require, among other things, that the parties bringing suit in federal court have standing to do so. *Id.* at 560. Specifically, the Court has explained that:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized . . . ; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" . . . . Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560-61 (internal citations and footnote omitted).

Under the FHA, "aggrieved persons" are authorized to file private lawsuits to obtain relief as a result of unlawful housing practices. 42 U.S.C. § 3613(a). The FHA defines an "aggrieved person" to include one who "claims to have been injured by a discriminatory housing practice. . . ." 42 U.S.C. § 3602(i). "Testers," meaning "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful . . . practices," *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982), have standing under the FHA so long as they "allege[] distinct and palpable injuries that are 'fairly traceable' to [the defendant's] actions." *Id.* at 376; *see also Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1103-04 (9th Cir. 2004) (relying on *Havens Realty* to conclude that disabled testers who sued under Section 3604(f)(2) of the FHA and who experienced the "dignitary harm" of observing discriminatory conditions had standing).

## II. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

**I. Standing to Assert FHA Claim Against BHDR**

BHDR argues that Harding lacks standing to assert an FHA claim against it because Harding "tested" the District before BHDR purchased the District. (Doc. No. 17 at 6-9.) In response, Harding asserts that he has standing to assert FHA claims against BHDR because BHDR continues to make the District unavailable to him for rent due to his handicap by not correcting the alleged violations of HUD Regulations at the District. (Doc. No. 25 at 1-4.)

To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

The three requirements for standing are established by the allegations of the Complaint. With respect to the first two elements, Plaintiff has sufficiently pled injury in fact that is fairly traceable to BHDR by alleging that the violations of HUD Regulations encountered by Plaintiff at the District on November 24, 2010, remain in existence and that Plaintiff "intends to return to the District on one or more future occasion[s] to specifically discern if the discriminatory practices at [t]he District have been corrected . . . ." (Doc. No. 11 ¶¶ 6, 8, 19.) The fact that Plaintiff visited the

District only to "test" for FHA compliance and allegedly found noncompliant features which remain in effect is sufficient injury in fact "fairly traceable" to BHDR to confer standing. *See Smith*, 358 F.3d at 1104 (holding that a tester need only observe a discriminatory architectural feature to establish standing under Section 3604(f)(2)). BHDR does not cite, and the Court does not find, any authority indicating that Plaintiff's failure to re-visit the District since it was purchased by BHDR alters this result. "[A] plaintiff should not be required to make continuous 'futile' future attempts to enter" an allegedly noncompliant facility in order to establish standing. *Norkunas v. Seahorse NB, LLC*, 720 F. Supp. 2d 1313, 1318 (M.D. Fla. 2010). Accordingly, Plaintiff has pled injury in fact that is fairly traceable to BHDR.

With respect to the third element, redressability, "the fundamental distinction between arguing no cause of action and arguing no Article III redressability, . . . [is] that the former argument is not squarely directed at jurisdiction itself, but rather at the existence of a remedy for the alleged violation of federal rights . . . ." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998). Plaintiff seeks damages, a declaratory judgment, and injunctive relief against BHDR, which, if granted as authorized by 42 U.S.C. § 3613(c)(1), would remedy Harding's alleged injuries resulting from the noncompliant conditions at the District. (Doc. No. 11 at 10-12.) Accordingly, Plaintiff has pled sufficient allegations to establish redressability.

BHDR's remaining arguments that Harding lacks standing are not directed to the three requirements for standing established by the Supreme Court and are otherwise unavailing. BHDR cites *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 507 (E.D. Va. 2002), for the argument that "the purchase of a 'dwelling' that may contain inaccessible feature due to alleged design and construction deficiencies is not a continuing violation of the FHA which could provide standing to

Harding." (Doc. No. 17 at 8.)  BHDR's reliance on *Moseke* is misplaced, as the discussion of "continuing violations" in *Moseke* relates to the FHA statute of limitations, which is not at issue here.  *Moseke*, 202 F. Supp. 2d at 500, 506-07.

BHDR also cites *Bernard v. Kee Manufacturing Co.*, 409 So. 2d 1047, 1049 (Fla. 1982), for the proposition that BHDR did not succeed to Orlando Apartments's liabilities when it purchased the District.  (Doc. No. 17 at 8.)  The issue of successor liability is inapposite because Plaintiff is suing BHDR for allegedly failing to correct noncompliant elements of the District, not for Orlando Apartments' allegedly deficient design or construction.  (Doc. No. 11 ¶¶ 28-31.)

Finding no other arguments by BHDR on the issue of standing, Plaintiff has standing to sue BHDR under the FHA.

## II. Sufficiency of FHA Claim Against BHDR

In Count II of the Amended Complaint, Plaintiff asserts that BHDR violated 42 U.S.C. § 3604(f)(1)-(2) by offering the District apartments for rent despite knowing that those dwellings failed to comply with the HUD Regulations.  (Doc. No. 11 ¶¶ 8, 25, 28-29.)  BHDR argues that this claim should be dismissed because its alleged conduct, even when presumed true, does not violated 42 U.S.C. § 3604(f)(1)-(2).[2]  (Doc. No. 7 at 13-17.)  As discussed below, given the absence of any caselaw discussing the viability of this claim and legislative history suggesting that Plaintiff's

---

[2] BHDR also asserts that Plaintiff fails to sufficiently plead a claim of "intentional discrimination" because the Amended Complaint only contains a bare, conclusory allegation that BHDR's conduct was intentional. (Doc. No. 17 at 10-12.)  Plaintiff does not allege an independent claim of intentional discrimination, only that BHDR's actions in violating 42 U.S.C. § 3604(f)(1)-(2) were intentional.  (Doc. No. 11 ¶¶ 29-30.)  In any case, intent may be pled generally pursuant to Federal Rule of Civil Procedure 9(b).

allegations plausibly state a claim for relief under 42 U.S.C. § 3604(f)(1)-(2), the Court finds that Plaintiff's claim against BHDR is well-pled.

Pursuant to 42 U.S.C. § 3604(f)(1), it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a [person's] handicap." Housing may be rendered "unavailable" under Section 3604(f)(1) by "conduct that directly impacts the accessibility to housing" because of a person's handicap. *See Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1143 (S.D. Fla. 2004) (construing Section 3604(a), which is materially identical to Section 3604(f)(1)); *see also Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 719 (D.C. Cir. 1991) ("By their plain terms subsections (a) and (f)(1) reach only discrimination that adversely affects the availability of housing," not matters of habitability like elevator service). Although the HUD Regulations[3] are not determinative of whether housing is accessible, *Barker v. Niles Bolton Assocs., Inc.*, 316 F. App'x 933, 941 (11th Cir. 2009), the degree of a landlord's failure to comply with the HUD Regulations may render housing inaccessible for all practical purposes and thus unavailable under Section 3604(f)(1). *See Mich. Protection and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 344 (6th Cir. 1994) ("Congress's intent in enacting § 3604(f)(1) was to reach property owners and their agents who directly affect the availability of housing for a disabled individual."); *United States v. Scott*, 788 F. Supp. 1555, 1562 (D. Kan. 1992) (holding that the phrase "to otherwise make unavailable or deny" in Section 3604(f)(1) "has been broadly construed to include all practices which make unavailable or deny dwellings on prohibited grounds." (internal quotations omitted)).

---

[3] The HUD Regulations apply to "covered multifamily dwellings for first occupancy after March 13, 1991." 24 C.F.R. § 100.205(a). The apartments at the District were allegedly constructed after March 13, 1991. (Doc. No. 11 ¶ 16.)

BHDR argues that this claim should be dismissed because Plaintiff does not allege that BHDR was involved in the design or construction of the District. (Doc. No. 17 at 13-17.) This argument is without merit, as Harding does not assert a claim against BHDR under 42 U.S.C. § 3604(f)(3)(C) for defective design or construction, under which only persons or entities participating in the design or construction of a covered dwelling may be liable. *Barker*, 316 F. App'x at 942 (citing *Baltimore Neighborhoods, Inc. v. Rommell Builders, Inc.*, 3 F. Supp. 2d 661, 665 (D. Md. 1998)). Further, the definitions of "discrimination" listed in Section 3402(f)(3) are not an exhaustive list of conduct prohibited by Section 3402(f)(1). *See* 42 U.S.C. § 3402(f)(3)(C) ("For purposes of this subsection, discrimination includes . . . ."); *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 481 (6th Cir. 2006) ("[T]he language appearing in 42 U.S.C. § 3604(f)(1) prohibiting owners of those developments from otherwise making unavailable accessible housing serves as a catch-all provision to cover other ways that an individual may make housing unavailable to the disabled beyond the forms of discrimination listed in 42 U.S.C. § 3604(f)(3)([C])."). Finding no authority to the contrary, the fact that BHDR is not alleged to have participated in the design or construction of the District, by itself, does not preclude BHDR from being liable under Section 3604(f)(1) for maintaining deficient components that render a covered dwelling "unavailable" to a prospective renter because of a handicap.

Plaintiff alleges that BHDR has failed to remedy at least 22 violations of HUD regulations. (Doc. No. 11 ¶¶ 4, 6, 25, 28.) These violations include inaccessible handicapped parking, excessive parking lot slopes, inadequate restroom facilities, excessively high mailboxes, excessively high thresholds, inadequate floor space and clearances, and protruding objects in the common area hallways. (*Id.* ¶ 25.) Collectively, the alleged deficiencies plausibly render housing at the District

inaccessible and thus "unavailable" to Plaintiff because of his handicap in violation of Section 3604(f)(1). *See Growth Horizons, Inc. v. Delaware Cnty, Pa.*, 983 F.2d 1277, 1283 (3d Cir. 1993) ("As its text and legislative history evidence, the purpose of [Section 3604(f)(1)] is to protect the housing choices of handicapped individuals who seek to buy or lease housing and of those who seek to buy or lease housing on their behalf. The conduct and decision-making that Congress sought to affect was that of persons in a position to frustrate such choices-primarily, at least, those who own the property of choice and their representatives."). Accordingly, Plaintiff has stated a claim against BHDR under 42 U.S.C. § 3604(f)(1) upon which relief can be granted.

Even if the allegedly inaccessible features do not make the District apartments "unavailable" to Plaintiff in violation of § 3604(f)(1), those deficiencies are prohibited under Section 3604(f)(2), which bars discrimination against persons with disabilities in, *inter alia*, the "privileges of sale or rental of a dwelling" and in the "facilities in connection with such dwelling" because of a person's handicap. 42 U.S.C. § 3604(f)(2); *see Smith*, 358 F.3d at 1104 (noting that subsection (f)(2) "prohibits a broader set of behavior" than (f)(1)); *Schroeder v. De Bertolo*, 879 F. Supp. 173, 175-78 (D.P.R. 1995) (upholding § 3604(f)(2) claims on behalf of mentally disabled resident who was prohibited from using the common areas of her condominium building). The legislative history underlying Section 3604(f)(2) makes clear that the failure to remedy deficiently constructed components of an apartment building may constitute discrimination pertaining to the "facilities in connection with a dwelling":

> New subsection 804(f)(2) would similarly prohibit discrimination against the same persons in the terms, conditions, privileges, or provision of services or facilities. This provision is intended to prohibit special restrictive covenants or other terms or conditions, or denials of service because of an individual's handicap and which have the effect of excluding, for example, congregate living arrangements for persons with handicaps. It would guarantee, for example, that an individual could not be

> discriminatorily barred from access to recreation facilities, parking privileges, cleaning and janitorial services and other facilities, uses of premises, benefits and privileges made available to other tenants, residents, and owners. To the extent that terms, conditions, privileges, services or facilities operate to discriminate against a person because of a handicap, elimination of the discrimination would be required in order to comply with the requirements of this subsection.

H.R. Rep. 100-711, at 23-24, 1988 U.S.C.C.A.N. 2173, 2184-85 (Jun. 17, 1988). The alleged deficiencies at the District implicate several of the examples of discriminatory facilities that Congress sought to remedy. (Doc. No. 11 ¶ 25.)

The House Committee further acknowledged the discriminatory effect that uncorrected components may have on prospective renters with disabilities:

> The Committee understands that housing discrimination against handicapped persons is not limited to blatant, intentional acts of discrimination. Acts that have the effect of causing discrimination can be just as devastating as intentional discrimination. A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying "No Handicapped People Allowed." In *Alexander v. Choate*, [469 U.S. 287, 296-97 (1985),] the Supreme Court observed that discrimination on the basis of handicap is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect" and mentioned "architectural barriers" as one factor that can have a discriminatory effect.

*Id.* at 25; 1988 U.S.C.C.A.N. at 2186. This point was also made in the Senate floor debates in the context of the obligations of the designer and builder of a covered dwelling. *See* 134 Cong. Rec. S10,454, 10,491 (1988) (statement of Sen. Simon) (noting that the architectural barriers that § 3604(f)(3)(C) would eliminate cause the "physical exclusion" of individuals with disabilities from much of the nation's housing stock and "are like 'Keep Out' signs to a substantial part of our populations"). In view of the legislative history, and in the absence of any relevant caselaw provided by the parties or found by the Court, BHDR's offering of apartments for rent which allegedly fail to provide the accessible and adaptable features described in the HUD Regulations

may amount to discrimination in "privileges" and "facilities" prohibited by Section 3604(f)(2). Accordingly, Plaintiff states a claim against BHDR in Count II upon which relief can be granted.

### III. Requests for Injunctive Relief

In the Amended Complaint, Plaintiff appears to request that the Court enjoin the owner of any apartment complex previously designed or constructed by BHDR to submit to a survey for FHA compliance. (Doc. No. 11 at 12.) BHDR argues that this prayer for relief against nonparties should be dismissed. (Doc. No. 17 at 17.) "[C]ourts of equity have long observed the general rule that a court may not enter an injunction against a person who has not been made a party to the case before it." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996) (citations omitted). Finding no argument by Plaintiff or legal authority to the contrary, the request for injunctive relief against unidentified nonparties has no legal basis and shall be stricken from the Amended Complaint. *See* 2 Moore's Federal Practice ¶ 12.37[3] (3d ed. 2009) ("[M]otions to strike requests for certain types of relief, such as punitive or compensatory damages, are generally granted if such relief is not recoverable under the applicable law.").

BHDR also contends that the Court should dismiss Plaintiff's requests for injunctive relief against the officers, directors, employees, agents, successors, and assigns of BHDR and all persons who are in active concert with BHDR. (Doc. No. 17 at 17.) Pursuant to Federal Rule of Civil Procedure 65(d), which describes the limits of the scope of injunctions, these parties may be enjoined if given actual notice "by personal service or otherwise." Accordingly, the Court will not strike Plaintiff's requests for injunctive relief against the officers, directors, employees, agents, successors, and assigns of BHDR and all persons who are in active concert with BHDR.

**Conclusion**

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss First Amended Complaint by Defendant Behringer Harvard District Reit, LLC (Doc. No. 17) is **GRANTED in part** and **DENIED in part**. The request for injunctive relief against nonparties in part V.E of the Complaint is **STRICKEN**. The Motion to Dismiss is **DENIED** in all other respects.

Plaintiff has leave to file a Second Amended Complaint within fourteen (14) days from the date of filing of this Order. Should Plaintiff fail to timely file a Second Amended Complaint, this case will proceed on the well-pled claims of the First Amended Complaint.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on April 15, 2011.

*[signature]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record